**Andrew ANDERSON, Johnny L. Dade, and Arion Johnson, Jr., Plaintiffs,**

**v.**

**GROCERS SUPPLY CO., INC. and General Drivers, Warehousemen and Helpers Local Union No. 968, Defendants.**

Civ. A. No. H–78–1984.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 26, 1979.

---

George W. Dana, Novelli & Harvie, Houston, Tex., for plaintiffs.

A. Martin Wickliff, Jr., Joe P. Martin, Fulbright & Jaworski, Houston, Tex., Eric Nelson, Nelson & Mallett, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

Plaintiffs, recently discharged employees of Grocers Supply Co., Inc., originally brought this action in state court seeking compensatory damages from both their employer for unlawful discharge and from their union, General Drivers, Warehousemen and Helpers Local Union No. 968, for unfair representation. Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441 (1970), on the grounds that this Court has original jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970). Both defendants then moved for summary judgment. For the following reasons, the Court grants defendant General Driver, Warehousemen and Helpers Local Union No. 968's motion in full, and grants defendant Grocers Supply Co., Inc.'s motion in part and denies it in part.

### I.

The facts may be briefly summarized as follows. Plaintiff Andrew Anderson was discharged on or about February 28, 1977; plaintiffs Johnny L. Dade and Arion Johnson, Jr. were discharged on or about November 3, 1977. Each plaintiff filed a grievance with the union which was processed according to the procedures provided in Article 9 of the contractual agreement between Grocer's Supply Co., Inc. (employer), and, General Drivers, Warehousemen and Helpers Local Union No. 968 (union). At the end of Step 3 of the contractual grievance procedure, just short of arbitration, the union in each instance decided that the employee's claim lacked merit and declined to proceed with the grievance to arbitration.

Considering the Motion for Summary Judgment filed by defendant union, the Court finds that plaintiffs have failed to exhaust the intra-union grievance procedures for redress of their complaint of inadequate representation during the recent discharge proceedings. (Anderson Deposition

II p. 112, 1. 21 to 1. 17; Dade Deposition p. 169, 1. 4–13; Johnson Deposition p. 122, 1. 21–25.) It has been widely held that exhaustion of internal remedies is an indispensable prerequisite to a civil suit against a union by one of its members, unless that member can show he has an adequate reason for failing to do so. *Glover v. St. Louis—San Francisco Ry. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Willetts v. Ford Motor Co.*, 583 F.2d 852, 855–56 (6th Cir. 1978); *Keppard v. Int'l. Harvester Co.*, 581 F.2d 764, 766 (9th Cir. 1978); *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919, 927 (7th Cir. 1974); *Imel v. Zohn Manufacturing Co.*, 481 F.2d 181, 183 (10th Cir. 1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *Brady v. Trans World Airlines*, 401 F.2d 87, 104 (3rd Cir. 1968), cert. denied, 393 U.S. 1048 (1969); *Neal v. System Bd. of Adjustment*, 348 F.2d 722, 726 (8th Cir. 1965). *But see, Dorn v. Meyers Parking System*, 395 F.Supp. 779 (E.D.Pa.1975).[1] The underlying justification for this policy is not simply an interest in judicial economy, but rather a desire to forestall "judicial interference with the internal affairs of a labor organization until it has . . . at least some opportunity to resolve disputes concerning its own legitimate affairs." *Brady v. Trans World Airlines, supra,* at 104.

An employee is not required to exhaust his union's internal remedies where the union lacks or has inadequate internal procedures by which grievances may be heard, or where the employee can show that resort to such procedures would be futile. *Glover v. St. Louis—San Francisco Ry. Co., supra,* 393 U.S. at 329–31, 89 S.Ct. 548.

Article XIX of the Constitution of the International Union establishes a procedure whereby complaints against a local union may be filed with the Local Union Executive Board (Art. XIX Sec. 1(c)). Decisions may then be appealed to the Executive Board of the Joint Council and subsequently appealed to the General Executive Board. (Art. XIX Sec. 2(a)). The constitution further requires all members to exhaust the remedies provided in the constitution before bringing suit. (Art. XIX Sec. 12(a)). This intra-union grievance procedure has received judicial approval in the past, *see, e. g., Fabian v. Freight Drivers and Helpers Local No. 557,* 448 F.Supp. 835 (D.Md.1978), and this Court now finds the procedure, on its face, to be adequate to assure union members of an opportunity to have grievances heard.

Union members need not resort to this procedure prior to filing suit if they can show that such efforts would be futile. However, plaintiffs have not alleged the futility of attempting to use the union's grievance procedures, much less made the "clear and positive showing of futility" which is required. *Imel, supra,* at 184. Consequently, plaintiffs will not be excused from failing to exhaust the union's grievance procedure and therefore cannot maintain this action against the union at this time.

## II.

The relationship between plaintiff employees and defendant employer, however, stands on a different footing. Exhaustion of intra-union remedies is not a defense to a suit against an employer for unlawful discharge under section 301 of the Labor Management Relations Act. *Harrison v. Chrysler Corp.,* 558 F.2d 1273, 1277–78 (7th Cir. 1977); *Petersen v. Rath Packing Co.,* 461 F.2d 312, 315 (8th Cir. 1972); and *Retana v. Apartment Motel, Hotel and Elevator Operators Union, Local No. 14, AFL–CIO,* 453 F.2d 1018, 1027 n.16 (9th Cir. 1972). An employee's obligation to exhaust internal union remedies is a contractual obligation owed exclusively to the union under the union's constitution. As the employer is not a party to the union's contract with its members, it cannot raise the de-

1. Although the district court in *Dorn* criticized the exhaustion of intra-union remedies requirement, the court concluded that "[w]hile a new balancing of the competing interests, different from the current one favoring the union, may thus seem appropriate, we think that any decision of that nature must be made by a higher court than this one." *Dorn, supra,* at 785.

fense that this court has no jurisdiction over a section 301 action simply because the discharged employee has not given the union the opportunity to fully review his charge of inadequate representation. This Court has jurisdiction to hear the employees' action against their employer.

■ This is not to say that the question of whether the union breached its duty to fairly represent the plaintiffs is irrelevant in an action against the employer. To the contrary, "the fact is that the question of whether a union has breached its duty of fair representation will in many cases be a critical issue in a suit under L.M.R.A. § 301." *Vaca v. Sipes*, 386 U.S. 171, 183, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Unless the plaintiffs can prove that the Union's representation was inadequate, the decision rendered as a result of the contractual grievance procedure is final and generally may not be appealed. Only a union's breach of duty to the employee which seriously undermines the integrity of the arbitral process would remove the finality provision of the labor agreement. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1975).

■ The relationship between the union and the employer when both are sued by an employee alleging that he has been unlawfully discharged by the employer and unfairly represented by the union was best summarized by the Seventh Circuit Court of Appeals in *Harrison v. Chrysler Corp.*, 558 F.2d 1273 (7th Cir. 1977).

In the action against the union, the breach of the duty of fair representation is the basis upon which damages are allowed. In the action against the employer, the union's breach merely removes an established grievance procedure as a valid basis for defense by the employer, and it exposes the employer to liability for damages arising out of the wrongful discharge. Thus, damages recoverable from the union and those recoverable from the employer, when the union and the employer are joined as defendants, are distinct and attributable to the separate fault of each. *Vaca v. Sipes* [386 U.S. 171], at 197–98, 87 S.Ct. 903 [17 L.Ed.2d 842 (1967)]. Damages attributable solely to the employer's breach of contract are not chargeable to the union, and increases in damages caused by the union's improper handling of the grievance are not chargeable to the employer. Id. *Harrison, supra*, at 1279.

Thus, an action against the employer proceeds on a different basis than the action against the union and dismissal of the union is not grounds for, as defendants argue, automatic dismissal of the employer. The employer may still be liable in an action for unlawful dismissal of an employee and the plaintiff can proceed against him alone. *See, NLRB v. Local 485, Int'l. Union of Electrical, Radio and Machine Workers*, 454 F.2d 17, 21 (2nd Cir. 1972).

■ The Court is aware of the practical difficulties in allowing the plaintiffs to go forward against the defendant employer absent the defendant union. Since the question of whether the union breached its duty of fair representation will have to be resolved as against both defendants, the preferable approach would be to have both defendants in one trial and resolve the issue of unfair representation first, as was done in *Steinman v. Spector Freight System, Inc.*, 476 F.2d 437 (2nd Cir. 1973). However, as the Second Circuit made clear in *NLRB v. Local 485, Int'l. Union of Electrical, Radio and Machine Workers, supra*, an employee may sue either the union or the employer separately.

When an employee claims . . . that a company violated a collective bargaining agreement and that his union thereafter failed to represent him properly in pressing his grievance, the rights of the employee, the union, and the company are all intertwined. . . . Under the developing law, [plaintiff-employee] had a number of choices open to him. He could have brought a lawsuit against his employer directly "under § 301 [29 U.S.C. § 185] for breach of a promise embedded in the collective bargaining agreement that was intended to confer a benefit upon the individual." [Citation omitted.]

Or [plaintiff-employee] could have sued the Local alone for breach of its duty of fair representation. [Citation omitted.] Or he could have joined the Company and the Local in a suit against both, although the essence of the claim against each would differ. [Citations omitted.] Such actions may be brought notwithstanding otherwise enforceable limitations on employee remedies. [Citations, footnote omitted.] *NLRB, supra*, at 21.

■ Our decision that the defendant employer is not entitled to summary judgment simply because the defendant union has been dismissed because of plaintiff's failure to exhaust his intra-union remedies is supported by the decision of *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182 (10th Cir. 1978), in which issues similar to those at hand were presented before the trial court. In that case, the Tenth Circuit Court of Appeals upheld the lower court's grant of summary judgment against the defendant union because of plaintiff employee's failure to exhaust his intra-union remedies. It reversed the lower court's grant of summary judgment in favor of defendant employer, however, because of its finding that a material issue of fact existed as to whether the employee was illegally discharged by the employer. We therefore conclude that the grant of summary judgment in favor of the defendant union for the above stated reasons in no way precludes plaintiffs from proceeding directly against the defendant employer.

### III.

■ In light of the above discussion, plaintiffs can avoid the finality of the contractual grievance procedure and press their claims of unlawful discharge against the employer only if they prove that the union violated their duty of fair representation. *Hines v. Anchor Motor Freight, supra.* Defendants argue that plaintiffs failed to present, as they must, any substantial issue of material fact concerning unfair representation. Plaintiffs' burden is clear. They must prove that the union's conduct towards them was arbitrary, dis-

criminatory, or made in bad faith. *Vaca v. Sipes, supra*, 386 U.S. at 190, 87 S.Ct. 903. Plaintiffs have no absolute right to have their grievances taken to arbitration. *Id.*, at 191, 87 S.Ct. 903. They are not entitled to relief if they merely show that their claim of unlawful discharge was meritorious. They must go further and establish that their meritorious claims of unlawful discharge were processed by the union arbitrarily or in bad faith. *Id.* at 190, 87 S.Ct. 903.

■ The court finds that plaintiff Andrew Anderson has failed, as a matter of law, to present a substantial issue of material fact as to whether the union unfairly represented him in the contractual grievance procedure. Rule 56(e) of the Federal Rules of Civil Procedure provides that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Plaintiff has failed to offer specific facts of arbitrary or bad faith conduct on the part of the union.

Anderson was terminated on February 28, 1977, for a commission of a dishonesty pursuant to Section 11.1 of the collective bargaining agreement, after it was determined that he had altered a medical release slip to account for his absences on February 17th and 18th. Plaintiff argues that he had permission from his doctor to change the release slip and that defendants refused to accept a subsequent, unaltered medical release from his doctor to cover both days he was absent.

Be that as it may, Anderson presents scant evidence to establish that his union representatives acted arbitrarily or in bad faith. He states in his deposition that at one meeting there was joking and laughing between his union representatives and the employer's representatives. (Anderson Deposition I, p. 66, 1. 9–25.) However, he also testified that his union representatives were present at every meeting, (Anderson Deposition II, p. 59, 1. 2 to p. 60, 1. 1) that

they were speaking in his behalf and trying to get his job back, (Anderson Deposition II, p. 60, 1. 20–22) and that he felt confidence in his representatives, particularly John Daigle. (Anderson Deposition II, p. 63, 1. 21–22.) Moreover, Anderson, by his own admission, lied to his union representatives and the company's representatives at the first meeting in telling them that he did not change the date on his medical release. (Anderson Deposition I, p. 57, 1. 2–8.) Such deceit would certainly lessen Anderson's credibility in the eyes of his employer even with the most vigorous advocacy by his union representatives, and thus weakens the argument that his discharge was a result of bad faith representation.

The evidence is undisputed that the union represented Anderson at several meetings with the company in an attempt to have him reinstated. The company's representatives refused to reinstate him, choosing to disbelieve Anderson's statements that he had permission from his doctor to change the medical release. Anderson's union representatives, after counseling him through Step 3 of the grievances procedure, concluded that Anderson's grievance was without merit and chose not to take the grievance to arbitration. Finally, Anderson stated that there was nothing disappointing about the way his union representatives handled his grievance other than that they did not take it to arbitration. (Anderson Deposition II, p. 68, 1. 24 to p. 60, 1. 2.) He also testified that the only reason he filed suit was that he was dissatisfied with the way his June, 1976 on-the-job injury, unrelated to this case, was handled. (Anderson Deposition II, p. 113, 1. 13 to p. 144, 1. 10.)

The Court concludes that such evidence, as a matter of law, fails to raise an issue of material fact that Anderson's union representation was arbitrary or carried out in bad faith.

██ The Court reaches a different conclusion with regard to defendant Grocers Supply Co., Inc.'s Motion for Summary Judgment against Johnny L. Dade and Arion Johnson, Jr. Johnson and Dade were terminated on October 24, 1977, for being absent from their work area without authority while on duty. Their employer alleges that these plaintiffs were loafing and playing dominoes on company time. Johnson and Dade claim that they were not playing dominoes, (Dade Deposition p. 61, 1. 14–15, Johnson Deposition p. 8, 1. 11–14) but were instead waiting, with permission, for a particular tool. (Johnson Deposition p. 23, 1. 17–25.)

While defendants argue that Johnson and Dade received fair representation from their union representatives, Johnson and Dade in their depositions state facts which indicate otherwise. According to Johnson, he and Dade told their union representatives that they had eye witnesses who would corroborate their stories, (Johnson Deposition, p. 62, 1. 14–22) but were not told to bring in the witnesses. (Johnson Deposition, p. 66, 1. 21 to p. 67, 1. 3.) Dade testified that the union told him that the witnesses would not testify in their behalf, (Dade Deposition, p. 79, 1. 5–13) but that he believed the officials were lying. (Dade Deposition, p. 89, 1. 23 to p. 90, 1. 13.) Dade based this belief on the fact that he later contacted the witnesses after the union had dropped the case and the witnesses denied refusing to testify. (Dade Deposition, p. 80, 1. 20 to p. 82, 1. 22.) He further testified that he believed that the union officials deliberately failed to present their witnesses, (Dade Deposition, p. 86, 1. 24 to p. 86, 1. 14) and that the officials never questioned what their company's witnesses were saying. (Dade Deposition, p. 100, 1. 6–11.)

The Court finds that the evidence presented by plaintiffs Johnson and Dade is sufficient to at least raise a substantial issue as to whether their representation by the union officials was arbitrary or in bad faith. We note that the only evidence which has been presented to this Court to date is the depositions of the plaintiffs themselves and consequently the Court does not intimate what its findings will be once additional evidence is presented at trial. We only hold that, as to Johnson and Dade, defendant Grocers Supply Co., Inc. is not entitled to summary judgment at this time.

In light of the Court's findings, it is hereby

ORDERED, ADJUDGED, and DECREED that:

1) Defendant General Drivers, Warehousemen and Helpers Local No. 968's Motion for Summary Judgment is GRANTED;

2) Defendant Grocers Supply Co., Inc.'s Motion for Summary Judgment is GRANTED as to plaintiff Andrew Anderson; and

3) Defendant Grocers Supply Co., Inc.'s Motion for Summary Judgment is DENIED as to plaintiffs Johnny L. Dade and Arion Johnson, Jr.